**IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF
VIRGINIA
Newport News Division**

| | |
|---|---|
| LEON MCLENDON | |
|     Plaintiff, | |
| | Civil Action No. 4:21-cv-00003 |
| v. | |
| COX COMMUNICATIONS HAMPTON ROADS, L.L.C., | |
|   Serve: | |
|   Registered Agent<br>  Corporation Service Company<br>  100 Shockoe Slip, Floor 2<br>  Richmond, Virginia 23219 | **COMPLAINT** – Americans with Disabilities Act Discrimination and Retaliation |
|   Defendants. | **Jury Trial Demanded** |

## COMPLAINT

Comes now the Plaintiff, LEON MCLENDON (hereinafter "Plaintiff" or "Mr. McLendon"), and files this Complaint against DefendantS, COX COMMUNICATIONS HAMPTON ROADS, L.L.C.  (hereinafter "Defendant" or "Cox"), and moves this Court for entry of judgement in his favor against the Defendant, as set forth herein:

## NATURE OF THE ACTION

1.     Plaintiff brings this action for damages and injunctive relief pursuant to the Defendant's violations of the Americans with Disabilities Act 42 U.S.C. §§ 12101, *et seq.*,  and to redress Defendant's deliberate and willfull unlawful employment discrimination against Plaintiff in violation of his federal rights.

2.     This action against Defendant Cox arises from Defendant's unlawful discrimination against, failure to reasonably accommodate, and termination of Mr. McLendon on account of his disability.

## JURISDICTION AND VENUE

3.     Pursuant to 28 U.S.C. § 1331, the Eastern District of Virginia has proper subject matter jurisdiction over this matter as it is a question of federal law.

4.     Specifically, this matter concerns the violation of the Americans with Disabilities Act 42 U.S.C. §§ 12101, *et seq.*,

5.     The Eastern District of Virginia is the proper venue for this action pursuant to 28 U.S.C. § 1391(c)(2) as it is the District in which Defendants committed the discriminatory acts, employed the Plaintiff, and conducted substantial business.

6.     The Newport News Division of the Eastern District of Virginia is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1),(2) as the location at which the discriminatory practices were perpetrated, where the Plaintiff was employed by Defendant, and is convenient to the parties and witnesses.

## PARTIES TO THIS ACTION

7.     Plaintiff, Leon McLendon, is an American citizen in the United States and a resident of the City of Hampton, Virginia.

8.     At all times relevant to the allegations in this Complaint, Mr. McLendon was an employee of Defendant.

9.     Defendant, Cox Communications Hampton Roads, L.L.C. is a company existing under and by virtue of the laws of the State of Virginia, organized in Georgia at 6205-B

Peachtree Dunwoody Road, Altanta, Georgia 30328, with its principal place of business in Hampton, Virginia.

10. Defendant employs over five hundred (500) employees and is an employer as defined by the Americans with Disabilities Act ("ADA"); 42 U.S.C. § 12111(5)(A).

## PROCEDURAL REQUIREMENTS

11. On July 9, 2020, Mr. McLendon filed a charge of disability discrimination in violation of the ADA with the Equal Employment Opportunity Commission ("EEOC"). Such charge was filed within one hundred eighty (180) days after the unlawful employment practices in violation of 42 U.S.C. §§ 12101, *et seq.*, occurred.

12. Plaintiff received his Notice of Dismissal and Right to Sue from the EEOC on October 10, 2020. (*See* **Exhibit A** – Notice of Dismissal and Right to Sue.)

13. The Complaint in this matter was filed with this Court within ninety (90) after receipt of a Notice of Dismissal and Right to Sue letter issued by the EEOC.

14. Mr. McLendon has complied with Equal Employment Opportunity Commission administrative requirements to file a suit under the ADA pursuant to 29 C.F.R. § 1601.28 and, having met his procedural and administrative deadlines, has elected to bring the action privately and thus has exhausted all available administrative remedies prior to bringing this suit.

## FACTUAL ALLEGATIONS

### *Mr. McLendon Works up to Standards at Cox with as a Qualified Disabled Individual*

15. At all times relevant to this Complaint, Mr. McLendon was employed by Cox.

16. Mr. McLendon has been diagnosed with high blood pressure and hypertension.

17. As a result of his condition Mr. McLendon's circulatory system is significantly degraded.

18.  Mr. McLendon regularly has to take medication for his conditions and still suffers from hinderances to his ability to engage in high stress activities, physical activities, and is in need of constant breaks to the bathroom on account of his conditions.

19.  This medical issue substantial hinders a major life function and is therefore a disability as defined by the Americans with Disabilities Act.[1]

20.  Mr. McLendon is a qualified disabled individual capable of performing the essential functions of his job.

21.  Mr. McLendon was a customer service representative at Cox communication.

22.  The essential functions of his position were to be able to communicate with customers when they called and help them resolve any issues they may have had.

23.  Mr. McLendon was able to interact with customers and solve their issues as prescribed by his employment requirements despite the impairments to his functions caused by his medical conditions.

24.   Mr. McLendon, from the time he began work, through his requests for reasonable accommodation, until he was terminated, was capable of performing his essential functions.

### Mr. McLendon Makes and Cox has Notice of, Requests for Reasonable Accommodations

25.  Cox Communications Hampton ("Cox") had notice of Mr. McLendon's disability.

26.  Starting in 2018, Mr. McLendon regularly spoke to his supervisor, Shannel Taylor ("Ms. Taylor"), about his need for reasonable accommodations and his disability.

---

[1] "*Disability* means, with respect to an individual—(i) A physical or mental impairment that substantially limits one or more of the major life activities of such individual… Major life activities include, but are not limited to: ... The operation of a major bodily function, including functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, ***circulatory, cardiovascular***" 29 C.F.R. § 1630.2 (Emphasis added.)

27. In 2018, Mr. McLendon was approved for reasonable accommodations on a regular basis by Ms. Taylor.

28. Mr. McLendon received medical documentation from his doctor detailing his disability and need for reasonable accommodations. (*See* **Exhibit B** – Doctor's Note from June 25, 2019).

29. Mr. McLendon returned these doctor's notes to Human Resources and to Ms. Taylor.

30. When Mr. McLendon submitted these forms to his doctor and returned the notes to Human Resources he was cooperating and advancing his need for reasonable accommodations.

31. Ms. Taylor, when granting Mr. McLendon his accommodations in 2018 and 2019, did so only after giving notice to and receiving approval from, the supervisor above her.

32. Through his multiple doctor note submissions and the accommodations that Ms. Taylor (and her manager) had provided and reported, Cox knew of Mr. McLendon's specific conditions and need for accommodation and approved his need from 2018 until November 2019.

33. While on notice, Cox received requests from Mr. McLendon for brief breaks throughout the day in order to take his medication and to avoid becoming light headed, endangering his health further.

34. These requests were made verbally to Ms. Taylor and serve as a reasonable accommodation to help him cope with this disability.

35. Mr. McLendon also provided written requests to his supervisor requesting reasonable accommodations.

36. Mr. McLendon's written requests were notes from his doctors, detailing his need for breaks in the day pursuant to his medical condition. (*See* **Exhibit B –** Doctor's Note from June 25, 2019).

37. The accommodations requested would not be an undue burden on Cox or in any way hinder their business operations.

38. This is shown by comparable employees being allowed to take restroom and smoking breaks throughout the day that are comparable to the requests made by Mr. McLendon.

39. Through 2018 into 2019 Cox was aware of and granted Mr. McLendon's requests for reasonable accommodations through Ms. Taylor and her superior.

40. Cox had notice of Mr. McLendon's need for reasonable accommodations from December 2018, when he began discussions about his conditions with Ms. Taylor.

41. Mr. McLendon first began working with Ms. Taylor on his reasonable accommodations in December 2018 and provided doctor's notes to her in January and February 2019. These were moved up the chain of command by Ms. Taylor.

42. Ms. Taylor told Mr. McLendon that she would work with him on his breaks and that he need not worry about the automatic generated write ups.

43. This reasonable accommodation was not, and should not be considered, an undue hardship on the business or an imposition in any way upon Cox's operations.

### *Cox Discriminates against Mr. McLendon and Retaliates Against Him For Previously Granted Reasonable Accommodations*

44. Mr. McLendon submitted multiple doctor's notes to the Cox Human Resources department between 2018 and August 2019, including in January, February, and April of 2019.

45.    Mr. McLendon would obtain forms from Cox, submit it to his doctor, and return the doctor's note to Cox, he does not have copies of these notes, they are in the custody and control of Cox.

46.    Every time that Mr. McLendon received a note from his doctor following these forms, he submitted it to Cox.

47.    Mr. McLendon submitted to Cox Human Resources another doctor's note requesting reasonable accommodations in August 2019.

48.    On the basis of the August 2019 written request, previous written requests, and oral requests, Ms. Taylor—and Cox—continued to provide reasonable accommodations to Mr. McLendon from August 2019 until November 2019.

49.    Mr. McLendon, from August 2019 until November 2019, was still granted reasonable accommodations pursuant to his oral and written requests to Ms. Taylor and by submission of doctors' notes to Human Resources.

50.    Ms. Taylor was replaced as Mr. McLendon's supervisor by Dennis Glutz (Mr. Glutz) in November 2019.

51.    After a change in managers, Mr. McLendon was suddenly denied his previously granted reasonable accommodation.

52.    Mr. Glutz, Cox Human Resources, and Cox were all aware of his disability, his need for reasonable accommodation, his doctor's recommendation, and his requests.

53.    Mr. McLendon requested orally reasonable accommodations of Mr. Glutz as he had of Ms. Taylor, and provided Mr. Glutz similar doctors' notes.

54.    Mr. Glutz denied Mr. McLendon the reasonable accommodations that had been previously provided by Ms. Taylor.

55.  Mr. McLendon went to Human resources in December 2019 to have his reasonable accommodations reaffirmed so that Mr. Glutz would provide them.

56.  The Human Resources officer who approved Mr. McLendon's reasonable accommodations said that the August 2019 doctor's letter he submitted (created pursuant to a Cox form Mr. McLendon had given to the doctor) was sufficient basis for his reasonable accommodations.

57.  This confirmation reaffirms that Mr. McLendon had been given reasonable accommodations—as granted by Ms. Taylor—and that these accommodations were approved at the very latest in August 2019.

58.   Mr. Glutz, who came on as manager in November 2019, looked back into Mr. McLendon's record between August 2019 and November.

59.  Mr. Glutz was not Mr. McLendon's manager in August, September, or October 2019.

60.  Using this retroactive review, Mr. Glutz wrote up and punished Mr. McLendon for taking his breaks (which were granted by Ms. Taylor).

61.  Mr. Glutz punished and wrote up Mr. McLendon for using the reasonable accommodations granted to him between August 2019 – November 2019.

62.  Mr. Glutz, on behalf of Cox, retroactively wrote up and punished Mr. McLendon for the reasonable accommodations that had been granted to him by Ms. Taylor.

63.  Even after the Human Resources department confirmed Mr. McLendon's August 2019 reasonable accommodation request Mr. Glutz maintained and submitted his retroactive write ups of Mr. McLendon's previously granted requests.

64.  Even after these accommodations were reconfirmed in November 2019, neither Glutz, nor Cox, had the write ups expunged.

65. Each of these write-ups that punished Mr. McLendon for reasonable accommodations that he had been approved for, is an individual act of discrimination.

66. Despite having received a doctor's note from Mr. McLendon stating his need for the accommodation, his new supervisor refused to grant his request.

67. In November 2019, Cox Human Resources affirmed Mr. McLendon's previously granted reasonable accommodations (from August to November 2019) on the basis of his letter in August 2019.

68. Cox Human Resources refused to expunge the write ups Mr. McLendon received for taking his reasonable accommodations between August 2019 – November 2019.

69. Cox refused to expunge these write ups even with Mr. McLendon's need for reasonable accommodations having been affirmed based on the August 2019 doctor's note and despite them having been previously granted by Ms. Taylor.

70. Mr. Glutz, as his supervisor who wrote up his disciplinary record, had notice that Mr. McLendon was granted reasonable accommodations from 2018, that those accommodations were further affirmed from August 2019 onward, and yet still chose to punish him for utilizing this accommodation from August 2019 onward.

71. Further, Cox's failure to implement the reaffirmed reasonable accommodations to August 2019 and decision maintain the retroactive write-ups from Mr. Glutz are an individual acts of discrimination.

72. Mr. McLendon was not only being denied his previously granted reasonable accommodations but was being punished retroactively for taking them when they had been give.

73.   This effectively nullifies any good that Cox had done by previously granting his requests for reasonable accommodations, they have, effectively, been discriminating against Mr. McLendon from the start.

74.   Cox was in violation of the Americans with Disabilities Act in discriminating against Mr. McLendon by denying his requested reasonable accommodations.[2]

### *Cox Further Discriminates and Retaliates Against Mr. McLendon by Terminating Him*

75.   Eventually, having gotten tired of Mr. McLendon's needs, Cox—through its managers and supervisors—decided to further discriminate and retaliate against Mr. McLendon by terminating him.

76.   After Cox denied him his reasonable accommodations, a form of discrimination, Mr. McLendon continued to oppose this decision.

77.   He spoke repeatedly with Human Resources and his supervisor about his need for the accommodation and his objections to them taking that accommodation away.

78.   In response to his opposition and to eliminate the costly disabled individual, Cox decided to terminate Mr. McLendon.

79.   Cox eventually used these write ups to justify their termination of Mr. McLendon.

80.   This retroactive punishment, from the time of Ms. Taylor's supervision, and the time that Human Resources said that Mr. McLendon should have been given reasonable accommodations (from August 2019 onward) demonstrates the willful and deliberate discrimination Mr. McLendon suffered.

---

[2] "It is unlawful for a covered entity not to make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability." 29 C.F.R. § 1630.9(a)

81.  Beyond just Mr. Glutz, the Human Resources department at Cox—with knowledge of his disability, need for accommodations, and having granted these requests—still approved of Mr. Glutz's discipline.

82.  Mr. Glutz reprimanded, disciplined, and wrote up Mr. McLendon for taking his reasonable accommodations from August to November 2019.

83.  Cox's reliance on these write ups as an excuse to terminate Mr. McLendon is an individual act of discrimination.

84.  On February 9, 2020, Mr. McLendon was fired from Cox.

85.  Mr. McLendon's termination followed an event in which a PIN verification was not used.

86.  A PIN violation of this type is a "coachable" offense that does not result in termination.[3]

87.  Other employees regularly committed PIN verification offenses of the type which Mr. McLendon was accused of committing.

88.  Cox brought in Mr. McLendon for termination shortly after the PIN verification issue.

89.  At his exit interview, Mr. McLendon was told by Ms. Andrea (Last name unknown)—Glutz' supervisor—that she was aware of his medical issues.

90.  Ms. Andrea further insinuated that Mr. McLendon's termination had something to do with the write ups generated by Mr. Glutz against Mr. McLendon for reasonable accommodations taken between August 2019 and November 2019.

91.  Cox relied upon the write ups Mr. McLendon received from Mr. Glutz between August 2019 – November 2019 to justify his termination.

92.  Cox was aware that these write-ups were baseless.

---

[3] Defendant admitted this statement in Mr. McLendon's VEC appeal hearing.

93.   Mr. McLendon had informed Cox Human Resources of Mr. Glutz' wrongful write ups and his need for accommodations from August 2019 onward had been affirmed.

94.   Cox, even having acquiesced to Mr. McLendon's need for accommodations, did not remove these retroactive write-ups

95.   Mr. McLendon's termination was based off write-ups created in spite of his reasonable accommodations requests that had been granted by Ms. Taylor.

96.   Cox did not terminate any other employees who were working at the same office and doing the same functions as Mr. McLendon.

97.   Cox did not terminate other employees for PIN verification issues of the type that Mr. McLendon was accused of committing.

98.   Cox terminated Mr. McLendon for his disability.

99.   Cox, through its Human Resource department, with notice, supported, encouraged, and participated in the discrimination against Mr. McLendon by allowing his termination.

100.  Mr. McLendon was terminated on account of his disability, after having been denied his reqeuests for reasonable accommodation and being retroactively punished for taking reasonable accommodations provided by Ms. Taylor.

101.  Cox by denying Mr. McLendon's reasonable accommodations, retroactively punishing accomodations taken, and terminating Mr. McLendon on account of his disability, discriminated against him in violation of the ADA.

## COUNT I: DISABILITY DISCRIMINATION FAILURE TO REASONBLY ACCOMMODATE

102.  Mr. McLendon reasserts and affirms the statements made in paragraphs 1-101.

103.   Defendant discriminated against Plaintiff by failing to provide reasonable accommodations pursuant to the ADA.[4]

104.   Plaintiff was a qualified disabled individual for all times relevant to this complaint, from—at latest—December 2018 onward.

105.   Plaintiff suffered from diagnosed diabetes and high blood pressure.

106.   These issues effected Mr. McLendon's ability to exercise, eat, and perform everyday functions.

107.   Plaintiff's significant life functions were substantially affected by his medical issues.

108.   Defendant was aware that Plaintiff was a qualified disabled individual.

109.   Plaintiff provided to Defendant, through his supervisors, medical records detailing his disabilities and his needs relating to those disabilities.

110.   Plaintiff orally informed his supervisor, Ms. Taylor, about his medical issues and his need for breaks in the day.

111.   Ms. Taylor told Plaintiff that she would work with him on these breaks.

112.   Ms. Taylor allowed Plaintiff to take breaks in the day, as requested by his doctor and himself.

113.   These breaks were a form of reasonable accommodation granted to Plaintiff by Defendant under Ms. Taylor.

114.   Ms. Taylor informed her superiors that she was providing these accommodations to Plaintiff.

---

[4] "To establish a prima facie case for failure to accommodate, Jacobs must show: "(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 579 (4th Cir. 2015)

115. Cox, under Ms. Taylor, did not take any active action to prevent the reasonable accommodations, aquiescing and granting them.

116. Plaintiff submitted numerous doctor's notes detaling his need for accommodation, including in February 2019, April 2019, and August 2019.

117. Plaintiff continued to utilize the reasonable accommodations provided by Ms. Taylor through November 2019.

118. Ms. Taylor was replaced by Mr. Glutz in November 2019.

119. Mr. Glutz refused Plaintiff's requests for reasonable accommodation, despite knowing and understanding his need for them.

120. Mr. Glutz reviewed Plaintiff's records from August 2019 through November 2019.

121. Mr. Glutz wrote up and punished Plaintiff for taking the breaks provided to him by Ms. Taylor between August 2019 and November 2019.

122. Mr. Glutz retroactively denied Plaintiff his requests for reasonable accommodation by writing him up and punishing him for his breaks—which had been granted originally by Ms. Taylor.

123. Defendant supported Mr. Glutz write ups.

124. Plaintiff informed Defendant, through human resources, that he was being written up for accommodations he requested in August 2019.

125. Human resources approved his letter from August 2019 and stated that it was sufficient to provide reasonable accommodations.

126. Defendant refused to remove Mr. Glutz' write ups from Plaintiff's record despite affirming his reasonable accommodation.

127.    By refusing to expunge these demerits, Defendant was functionally denying Plaintiff his reasonable accommodations, despite having confirmed that he had adequately asked for them, and despite having provided them in the past.

128.    Mr. Glutz and Defendant discriminated against Plaintiff on account of his disability by denying his requests for reasonable accommodation without cause.

## COUNT II: RETALIATION

129.    Mr. McLendon reasserts and affirms the statements made in paragraphs 1-128.

130.    Defendant retaliated against Plaintiff by writing him up for taking his previously granted reasonable accomodations.[5]

131.    Plaintiff engaged in a protected activity.

132.    Plaintiff utilized the reasonable accommodations granted to him by Ms. Taylor for his disability.

133.    Defendant was aware that Plaintiff was engaged in a protected activity by taking his breaks, and indicated as much through Ms. Taylor, Human Resources, Mr. Glutz, and Ms. Andrea.

134.    Plaintiff continued to utilize the reasonable accommodations provided by Ms. Taylor through November 2019.

135.    Ms. Taylor was replaced by Mr. Glutz in November 2019.

136.    Mr. Glutz retroactively generated write ups for utilizing his reasonable accommodations between August 2019 and November 2019.

---

[5] "In order to establish a prima facie case of retaliation, a plaintiff must allege (1) that she has engaged in conduct protected by the ADA; (2) that she suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action." Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002).

137.   Plaintiff was engaged in a protected activity when he took his reasonable accommodations.

138.   Defendant allowed Mr. Glutz's retroactive punishments to stay on Plaintiff's record.

139.   Defendant relied upon Mr. Glutz write ups of Plaintiff to justify his termination as referenced by Ms. Andrea at Plaintiff's exit interview.

140.   Mr. Glutz and Defendant retaliated against Plaintiff for engaging in a protected activity— utilizing his previously granted reasonable accommodations—by punishing him for taking these breaks and terminating him for utilizing his reasonable accommodations.

## COUNT III: DISABILITY DISCRIMINATION, TERMINATION ON ACCOUNT OF DISABILITY

141.   Plaintiff reasserts and affirms the statements made in paragraphs 1-140.

142.   The Age Discrimination in Employment Act ("ADA") makes it unlawful for an employer to discriminate against an employee on account of age. 42 U.S.C. §§ 12101 *et seq.*

143.   Per Title 42 of the United States Code, discrimination includes adverse employment actions such as termination on account of disability.

144.   Under Title 42 of the United States Code, Defendant discriminated against Mr. McLendon by terminating him on account of his disability.[6]

145.   Plaintiff was a qualified disabled individual for all times relevant to this complaint, from—at latest—December 2018 onward.

146.   Plaintiff suffered from diagnosed diabetes and high blood pressure.

---

[6] "To establish a claim for disability discrimination under the ADA, a plaintiff must prove '(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability.' " Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 572 (4th Cir. 2015).

147.  These issues effected Mr. McLendon's ability to exercise, eat, and perform everyday functions.

148.  Plaintiff's significant life functions were substantially affected by his medical issues.

149.  Defendant was aware that Plaintiff was a qualified disabled individual.

150.  Plaintiff provided to Defendant, through his supervisors, medical records detailing his disabilities and his needs relating to those disabilities.

151.  Mr. McLendon, despite his disability, could perform all of the necessary functions of his position when he was terminated.

152.  Plaintiff has had these disabilities since December 2018 and was able to do his job and receive commendations for his work.

153.  Defendant was aware of these disabilities when they discriminated against him.

154.  Mr. Glutz was Plaintiff's manager and on behalf of Defendant directly discriminated against Mr. McLendon.

155.  Plaintiff was performing his duties as expected by the employer at the time of his termination.

156.  Plaintiff had no outstanding personal issues with any of the other employees at the the offices where he worked for Defendant.

157.  Plaintiff suffered an adverse employment action on account of his disability.

158.  Plaitniff was terminated by Defendant on February 9, 2020.

159.  Ms. Andrea, a supervisor for Defendant, informed Mr. McLendon that his termination had something to do with the write ups he had received from Mr. Glutz.

160. Mr. Glutz had retroactively generated write ups to punish Mr. McLendon for taking reasonable accommodations pursuant to his disability related need that had been granted by Ms. Taylor.

161. Mr. Glutz' write ups were the reason Mr. McLendon was terminated, as stated by Ms. Andrea.

162. Defendant was aware that these write-ups were wrongful.

163. Defendant, through human resources, had been told by Mr. McLendon that he needed reasonable accommodations.

164. Defendant, through Ms. Taylor granted these accommodations between August 2019 and November 2019.

165. These reasonable accommodations were confirmed as valid and in the system by Defendant's human resources in November 2019.

166. Despite this, Mr. Glutz went through Mr. McLendon's record from August 2019 through November 2019 and generated write ups for his breaks.

167. Plaintiff informed Defendant through human resources of these problematic retroactive write ups that functionally denied his reasonable accommodations.

168. Defendant declined to expunge the write ups.

169. These write ups were cited as the reason that Mr. McLendon was terminated.

170. Mr. McLendon was therefore terminated because he was utilizing a reasonable accommodation pursuant to his disability.

171. Plaintiff was terminated because of his disability.

172. Other workers without a disability were not terminated were treated more favorably than Plaintiff.

173.   No other workers with Mr. McLendon were terminated when he was.

174.   Plaintiff's termination was willfull and deliberate.

175.   Defendant purposefully and willfully terminated Mr. McLendon on account of his disability.

176.   Mr. Ahmed suffered loss of income and benefits as a result of Defendant's discriminatory termination.

177.   Mr. Ahmed has and will continue to have in the future a dimunation of wages as a result of Defendant's discrimination.

178.   Defendant knowingly and purposefully violated the ADA by terminating Mr. Ahmed on account of his disability.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgement against the Defendant as follows:

1.   Appropriate declaratory relief declaring the acts and practices of Defendant to have been in violation of Mr. McLendon's rights as secured by the Americans with Disabilities Act 42 U.S.C. §§ 12101, *et seq.*;

2.   Permanently enjoin Defendant, its assigns, successor, agents, employees, and those acting in concert with them from engaging in discrimination against employees;

3.   For appropriate actual damages against Defendant for violations of the Americans with Disabilities Act in amounts no less than:

     a.   $55,000 in Back Payment of Plaintiff's wages from the time of termination to present (calculated to date of filing); and further for backpayment of Plaintiff's from time of filing onward.

    b. $20,000 in Payment for loss of benefits such as health insurance, dental insurance, vision insurance, and retirement contributions as a result of Plaintiff's wrongful termination.

4. $350,000 for punitive damages for willful violation of the ADA for COUNT I: Failure to Reasonably Accommodate;

5. $350,000 for punitive damages for willful violation of the ADA for COUNT II: Retaliation;

6. $350,000 for punitive damages for willful violation of the ADA for COUNT III: Termination on Account of Disability;

7. For all other wages and benefits lost or denied;

8. For an award to Plaintiff of his reasonable attorney's fees, and costs incurred in this action, together with expert witness fees and expenses;

9. For an award of any additional amounts necessary to offset the adverse tax consequences of an award received in a lump sum;

10. For an award of pre-judgement and post-judgement interest on any monetary award; and

11. For an Order of any other relief this Court deems to be just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

12. Mr. McLendon, pursuant to Rule 38 of the Federal Rules of Civil Procedure, hereby demands a trial by jury in this action for all claims so triable.

Respectfully Submitted,

LEON MCLENDON

<u>          /s/          </u>
Brandon T. Bybee (VSB# 92140)
William B. Barteau (VSB# 93381)
BRANDON T. BYBEE, P.L.C.
P.O. Box 9528
Norfolk, VA 23505
Tel: (757) 568-0090
Fax: (866) 568-0090
brandon@bybeelegal.com
william@bybeelegal.com
*Counsel for Plaintiff*